ORENDORFF, Respondent, v. TERMINAL RAIL-
ROAD ASSOCIATION OF ST. LOUIS, Appel-
lant.

St. Louis Court of Appeals, January 2, 1906.

1. **FELLOW-SERVANT:** Loading Car. An employee of a railroad
company engaged in the work of loading a freight car is "en-
gaged in the work of operating such railroad" within the mean-
ing of section 2873, Revised Statutes of 1899, so as to make the
employer, the railroad company, liable for damages sustained
by the employee by reason of the negligence of a fellow-servant.

2. **PERSONAL INJURIES:** Excessive Verdict. Where plaintiff,
in an action for personal injuries, showed that his leg was brok-
en and that he was rendered incapable of climbing a ladder or
of walking rapidly, by the injuries, although it was shown that
he earned less than three hundred dollars a year, a verdict for
fifteen hundred dollars was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Matt.
G. Reynolds,* Judge.

AFFIRMED.

*McKeighan, Wood & Watts* and *Wm. R. Gentry* for
appellant.

The plaintiff was a fellow-servant with the other
men working with him and around him, in loading and
unloading the cars. If he was injured by the negligence
of anyone, it was the negligence of a fellow-servant.
The plaintiff is not under the protection of the statute
in this State which enables employees to recover from
railroad companies on account of the negligence of fel-
low-servants, because that statute limits such right to
those who are hurt while they themselves are engaged
in operating the railroad. Sec. 2873, R. S. 1899; Akison
v. Railway, 106 Ia. 58; Struble v. Railway, 70 Ia. 560.

*A. R. Taylor* for respondent.

The first point made for reversal by appellant is that the fellow-servant law does not protect an employee engaged in loading cars. That such an employee is not engaged in the work of operating a railroad within the meaning of section 2873 of the Revised Statutes of Missouri of 1899. This point we submit is very thoroughly disposed of by the decision of the Supreme Court in the case of Callahan v. St. Louis Merchants' Bridge Terminal Railway Company, 170 Mo. 496.

STATEMENT.—The south side of defendant's warehouse, in the city of St. Louis, is about one and one-half blocks in length, and parallel with it are two railroad tracks known as tracks Nos. 1 and 2. A platform is built out near track No. 1, on a level with the floors of cars. Cars to be loaded from the warehouse are placed on these tracks and the freight is conveyed to them on hand trucks. The platform is connected with cars on track No. 1 by a small steel bridge and the intervening space between opposite cars on tracks Nos. 1 and 2 is bridged in the same manner. On September 5, 1903, plaintiff, then in the employ of defendant, was assisting in conveying freight from the warehouse to a car on track No. 2. His evidence is that after taking a large glass from the truck and depositing it in the car on said track, he and two other employees started to walk back to the platform through a car on track No. 1; that both ends of this car were loaded with boxes even with the door lines and about halfway to the ceiling; that his two companions preceded him and reached the platform, but before he could do so the car was struck by an engine and cars, operated by the defendant's employees, with such force as to cause the boxes in said car to fall; that they fell upon him and knocked him down, a large, heavy one falling upon his left leg, breaking both bones a few inches above the ankle.

The evidence is that it was the uniform practice of the defendant to give warning whenever the cars being loaded were to be disturbed, by bringing in an engine, in time for the laborers to get out of the cars and remove the bridges. Plaintiff testified that he heard no warning before he felt the shock and was knocked down. Several witnesses in his behalf testified that no warning was given. These witnesses and plaintiff further testified that the shock, noise and concussion caused by the engine striking the car was unusual and very severe.

The evidence for defendant shows that the car on which plaintiff was hurt was not loaded to the door lines; that plaintiff was found three or four feet east of the door line and when asked what he was doing in that part of the car said he was trying to hold up that box that fell upon him. Defendant's evidence also shows that warning was given and repeated in a loud tone of voice by plaintiff's foreman, so near plaintiff that he must have heard it and that the warning that the engine was coming on track No. 1 was given in ample time to have enabled plaintiff to get out of the car before it was struck by the engine; and also, as was the custom after a warning was given, that the bridges had been withdrawn and were on the platform. The evidence for the defendant further shows that the engine did not strike the car with unusual force and did not cause an unusual shock or jar. Plaintiff's evidence shows that some of the bridges connecting the cars on the two tracks fell in between them and that the car on track No. 1, in which plaintiff was hurt, was shoved back about half a car-length. Plaintiff denied that he made the statement that he was trying to hold up the box that fell upon him, and testified that he was near the door when knocked down and not toward the east end of the car.

The jury found for plaintiff and assessed his damages at fifteen hundred dollars. After an unavailing motion for new trial, defendant appealed.

BLAND, P. J. (after stating the facts).—1. At the close of plaintiff's evidence and again at the close of all the evidence, defendant offered an instruction in the nature of a demurrer to the evidence. The refusal of the court to grant this instruction is assigned as error. That the plaintiff and the employees operating the engine were fellow-servants, is conceded, and plaintiff should have been nonsuited unless he was a servant engaged in the operation of defendant's railroad, within the meaning of section 2873, R. S. 1899, which provides.

"That every railroad corporation owning or operating a railroad in this State shall be li\_\_le for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof: Provided, that it may be shown in defense that the person injured was guilty of negligence contributing as a proximate cause to produce the injury."

The above section has been twice before the Supreme Court for construction; in Callahan v. Railroad, 170 Mo. 473, 71 S. W. 208 and Sams v. Railroad, 174 Mo 53, 73 S. W. 686; and once before the Kansas City Court of Appeals in Stubbs v. Railway, 85 Mo. App. 192. In the Callahan case, the evidence showed that Callahan was a section hand engaged in repairing track and that he was injured by the negligence of his fellow section hands. The court held that he could recover. MARSHALL, J., after reviewing the cases from other jurisdictions construing similar statutes, at pages 495-6, said:

"It thus appears that everywhere except in Iowa and Minnesota, the adjudications agree that it is not essential that the injury should have been inflicted by reason of the negligence of a fellow-servant while actually engaged in running a car, but that the injured employee may recover, if injured by the negligence of a fellow-servant while they are engaged in doing any work for the railroad which was directly necessary for the opera-

tion of the railroad, and that even so sweeping a statute as that of Indiana was held by the Supreme Court of the United States, not to be repugnant to or violative of the Federal Constitution.

Under the language of our statute it is necessary for the injured employee to show that he was injured 'while engaged in the work of operating such railroad.' Construed either by its own terms or in the light of the cases cited from other jurisdictions, it results in holding that the right to recover is not limited to cases where the injury is inflicted by reason of the negligence of a fellow-servant while actually moving a train or engine, but that the law embraces all cases where the injury is inflicted upon an employee while engaged in the work of operating a railroad, by reason of the negligence of any fellow-servant who is likewise engaged in the work of operating a railroad, and that the term 'operating such railroad' includes all work that is directly necessary for running trains over a track, and that it includes section hands who are engaged in working upon, repairing or putting in shape the track, road bed, bridges, etc., over which the trains must run."

In the Sams case, a majority of the court held that street railroads were not included in the section (they have since been included by a legislative amendment of the section. Laws, 1905, p. 138). In the Stubbs case, it was held the statute embraced members of the section gang engaged in removing old rails from a track and putting in new ones.

In the case of Williams v. Railway, 106 Mo. App. 61, 79 S. W. 1167, cited in briefs of counsel, the plaintiff was injured while at work for a railroad company in the State of Iowa and hence the case was controlled by the Iowa statute, and the construction given it by the Supreme Court of that State, to the effect that only such servants as are engaged in running trains are embraced

in the statute, was followed. The case has no bearing on the one in hand.

Our statute by its very terms embraces all agents and servants of a railroad corporation engaged in the work of operating such railroad. In the operation of a railroad it is as necessary to load and unload freight cars as it is to hitch an engine to them and haul them back and forth over the road, and the work is as directly connected with the operation of the road as is any other service a railroad company is required by law to perform. See Railroad v. Koehler, 37 Kan. 463; Railroad v. Haley, 25 Kan. 35, and Railroad v. Pontius, 157 U. S. 209, in all of which it was held that a servant engaged in unloading a car was embraced in the Kansas Fellow-Servant Damage Act, and that the labor performed was directly connected with the operation of the road. We think there is no doubt that the services plaintiff was performing brings him within the protection of the statute, and conclude that the demurrer to the evidence was properly overruled.

2. Defendant insists that the damages assessed by the jury are excessive and in his argument refers to the small amount of wages (less than three hundred dollars) plaintiff lost on account of the injury and the insignificant sum he paid out in and about his cure. This argument leaves out of view that portion of plaintiff's evidence which shows that the broken bone incapacitates plaintiff from climbing a ladder or from walking rapidly, and that the injury, being so near the ankle joint, causes and will continue to cause him more or less pain at times. This evidence shows a permanent impairment of the free and full use of the left leg and a permanent source of occasional pain. In our opinion, instead of being excessive, fifteen hundred dollars is a very conservative, in fact, a barely adequate compensation for such an injury.

The judgment is affirmed. All concur.